RATHBORNE v. HATCH.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

APPEAL—QUESTION NOT RAISED BELOW.

    Where the insufficiency of the complaint was not raised below as ground for overruling a demurrer to a counterclaim, a judgment sustaining the demurrer will not be reversed on that ground, there being no contention that the decision holding the counterclaim to be bad was erroneous.

Appeal from special term, New York county.

Action by Charles L. Rathborne against Edward Hatch. From an interlocutory judgment sustaining plaintiff's demurrer to defendant's counterclaim, defendant appeals on the sole ground that the complaint itself is bad. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Henry Tompkins, for appellant.
George E. Morgan, for respondent.

PER CURIAM. The question of the sufficiency of the complaint was not raised at special term, and was not, therefore, passed upon. We have, however, examined the complaint, and think it states a good cause of action. It is not contended by the appellant that the decision of the special term holding the counterclaim to be bad is erroneous, and it therefore follows that the judgment should be affirmed, with costs.

---

In re PRUYNE et al.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. GUARDIANSHIP—TRUST FUND—TAXATION—PAYMENT OF ILLEGAL TAXES—REIMBURSEMENT.

    A residuary legatee was guardian of testator's infant child, and directed to establish a trust fund in favor of such child, which was never done, the personal estate being insufficient. The guardian remained in possession of the realty as residuary legatee, and regarded the trust fund as invested therein. Held, that under the statute providing that every person shall be taxed for all personal property under his control as guardian, etc., he was not entitled to credit in his account for taxes paid on the trust fund as guardian.

2. SAME—INVESTMENT OF TRUST FUND—INTEREST.

    Where testamentary guardian was directed to establish trust fund for his ward, but the personalty was insufficient, and the realty was leased for a term of years, the guardian was liable to the ward for the income derived from such lease, and at the end of the lease, on failure to sell the property to create a fund as provided by the will, was liable to the ward for 5 per cent. annual interest on the amount of the fund which should have been created by such sale.

3. SAME—COMPOUNDING OF INTEREST.

    The annual compounding of the interest was proper.

4. SAME—POSSESSION OF WARD—HABEAS CORPUS—EXPENSES OF SUIT—REIMBURSEMENT.

    A testamentary guardian, entitled under the will to the custody of the ward, brought habeas corpus to obtain possession. The guardian

appealed from a decision denying him custody of the ward without contravening his claim under the will, but on the ground that it was not advisable for the ward to be taken from the home where she was then living. *Held*, that the guardian should be allowed the costs and expenses incurred on the original hearing, but not that of the appeal.

Appeal from surrogate's court, Jefferson county.

Judicial accounting of Lafayette E. Pruyne, as testamentary guardian under the will of Lyman E. Bigelow, deceased. From a decree settling the accounts of said Pruyne as testamentary guardian, he appeals. Modified.

While the appeal is from the whole of said decree, said appellant really complains of the same because it (1) charges him with compound interest at the rate of 6 per cent. per annum upon the funds which he was directed to invest and administer for the benefit of said infant; (2) denies him credit for the sum of $880.35, taxes assessed against and paid by him as such guardian; (3) denies him credit for the sum of $708.93, expended for legal services and disbursements in habeas corpus proceedings instituted by him to obtain possession of said infant from the respondent Charles H. Walts.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John Lansing, for appellant.
Elon R. Brown, for respondents.

HISCOCK, J. Lyman E. Bigelow, of Jefferson county, died on or about August 28, 1884, leaving, him surviving, a wife, from whom he was separated at the time of his death, and also the respondent Tirzah G. Bigelow, then a young child. He also left a last will and testament, which contained the following material provisions:

"I give and bequeath * * * to my daughter Tirzah G. Bigelow the sum of five thousand dollars. * * * And I direct my said executor to keep the said five thousand dollars herein given to my said daughter safely invested, and to apply the income therefrom to the support, maintenance, and education of my said daughter until the principal shall be paid over to her, as hereinafter provided, or until her death, if it occur before the time for the payment of such principal sum to her, as hereinafter provided. And I direct my executor to pay to my said daughter, on her arriving at the age of twenty-one years, one-half of said principal sum of five thousand dollars, and on her arriving at the age of twenty-six years the remaining one-half thereof, and I make these two legacies to my wife and daughter liens and charges upon my real estate."

Said will also provided that appellant, Pruyne, should be residuary legatee as to said $5,000 in case of the death of the daughter. It also appointed him guardian during her minority of the person and estate of said daughter, and disposed of the "custody and tuition of said daughter during her minority to said Pruyne." Said testator also made said Pruyne his general residuary legatee and sole executor of his will.

The mother died soon after the death of her husband, having arranged before her death that the infant, who up to that time remained with her, should live with, and be under the care and custody of, the respondent Charles H. Walts and his wife. The latter, after such death, did take the child to live with them, and ever since have exercised such care and custody in a most careful, judicious, and devoted manner. The infant, having arrived at the age of 21 years,

instituted this proceeding for the purpose of calling her guardian to an account.

The testator did not leave sufficient personal property with which to discharge his other obligations and bequests, and also make the trust fund in favor of his daughter. A considerable portion of his estate at the time of his death consisted of a farm in the county of Jefferson, which, subject to the bequests in favor of the wife and daughter, passed to said Pruyne as residuary legatee. The latter never converted any of the testator's real estate into personalty for the purpose of establishing the trust fund in favor of the daughter. He never in any form created and transferred to himself as guardian any separate fund or property with which to meet the requirements of said trust. Down to and including November 10, 1886, which was shortly before the infant's mother died, he paid over to the mother, for the benefit of the infant, income as upon the trust fund at the rate of 6 per cent. per annum, but since said date has not paid any income upon such trust to or for the benefit of the infant; the latter, so far as appears, being entirely supported and provided for by the respondent Walts and his wife.

Upon this accounting appellant has attempted to settle with the infant upon the theory that the trust fund for her was invested in the Jefferson county farm above referred to, and that the net proceeds thereof should be the measure of his liability for income. In operating this farm down to the time of the accounting, as appellant did, he kept no separate account with the infant of her alleged share of its income and profits, and set apart no moneys for her benefit, but mingled the affairs and receipts of the farm with his other business. The evidence amply warrants the finding by the surrogate "that the said Lafayette E. Pruyne, as executor of Lyman E. Bigelow, or personally, has never paid over to himself, as guardian of Tirzah G. Bigelow, any part of the said five thousand dollars given to her by the will as aforesaid; that the said Lafayette E. Pruyne has converted a number of parcels of real property into money, and has received the income of the real property unsold since the death of the said Lyman E. Bigelow, and has not kept any separate account of the income of the said five thousand dollars, or made any investment on account thereof." We will take up first the item of $880.35, for which the appellant sought credit in his account for taxes assessed against him as guardian and paid, and which item was disallowed by the surrogate. We think that the finding and conclusion of the surrogate upon this point are justified and entirely proper. Pruyne was assessed, from and including the year 1887, in the town and village of Adams, Jefferson county, where he lived, and paid the above amount on such assessment for village, school, state, and county taxes. He was assessed as guardian. As we have seen, he never had in his hands as guardian any funds or property whatever. His claim, as formulated upon this accounting, has been that the trust fund which should have been created and placed in his hands as such guardian had been allowed to lie invested in the farm which was in his hands and possession as executor or residuary legatee. The statute covering the subject of assessments provides that "every person shall be taxed

in the tax district where he resides when the assessment for taxation is made for all personal property owned by him or under his control as agent, trustee, guardian, executor or administrator." This fund of $5,000 was never under his control as guardian. Willcox v. Smith, 26 Barb. 316; Wells v. Knight, 5 Hun, 50. We see no legal theory under which he could be properly assessed as guardian upon the fund, or under which, having paid the taxes upon an illegal assessment, he can take credit therefor upon this accounting.

We next take up the item of interest at the rate of 6 per cent. per annum, with annual rests, with which the surrogate charged appellant from the year 1886, when he stopped paying the income to the infant's mother for her benefit. Appellant produced a detailed account of the receipts from, and disbursements on account of, the farm in which he claims the infant's legacy should be regarded as invested. While not kept in its present form at the time, he testifies that it is made up from various memoranda and accounts, and is correct. This claim of correctness is not seriously challenged by respondents. It shows a net income of less than 4½ per cent. per annum. Said guardian, however, in his account says that he is "willing to account for the said income (of said trust) at the amount which I have actually received from the same, which does not exceed more than 4½ per cent. per annum on the amount of said legacy." At the time of testator's death this farm was under lease by him to a tenant until March 1, 1889. There is no complaint that there was any improper application by appellant of his testator's personal property which left respondent's legacy and trust dependent upon this farm for realization. Appellant claims that he made some efforts to sell it. We do not think he is chargeable with legal fault for not having procured a sale or disposition of it during the continuance of the lease which the testator had made. He perhaps had a right to regard such lease as a disposition or investment by his testator of that portion of his property to which the trust in favor of his daughter was subject. We think, therefore, that during this period from November 10, 1886, to March 1, 1889, the appellant should not be charged with a greater rate of interest than 4½ per cent. per annum. At the expiration of said lease it was undoubtedly his duty, either by sale of the farm or in some other manner, to comply with the terms of the will, and have transferred into his possession as guardian a separate fund of $5,000. It also became his duty to keep such fund properly and safely invested for the benefit of the infant. This he failed to do, and he was properly chargeable with interest, which was not regulated or limited by the net proceeds of the farm. The question, however, arises whether it was proper to fix the rate at 6. per cent. during this second period after the expiration of the lease. The surrogate has not found that Pruyne was guilty of bad faith or willful misconduct in not making this transfer and investment of funds. We think the evidence indicates that he was subject to extremely bad judgment and misconceived notions of duty rather than guilty of intentional wrongdoing. With that view we regard it more just to charge him with interest at the rate of 5 than of 6 per cent. There is nothing to indicate that he has realized a greater

rate of interest than this. Upon the other hand, we feel quite confident that such rate involves a very liberal estimate of what could have been realized for the infant if the guardian had properly discharged his duty by creating and investing a separate and distinct fund. In reaching that conclusion, we have in mind not only the rates of interest prevailing during the period in question upon securities in which this fund might legally have been invested, but also another fact. If the guardian had taken said fund into his hands as such, it is undisputed that it would have been subject to the taxes which have now been disallowed to the guardian. These taxes would have aggregated more than 1 per cent. per annum, to be deducted from the income.

The annual compounding of the interest was proper.

The last items disallowed by the surrogate in appellant's accounts, and of which disallowance he complains, are, respectively, $245.94, costs in a habeas corpus proceeding paid by him to the respondent Walts, and $462.99, disbursements and counsel fees incurred by him in said proceedings. As heretofore stated, soon after the death of the infant's mother the appellant instituted habeas corpus proceedings to obtain the possession and custody of the infant from Judge and Mrs. Walts, with whom she had gone to live. These proceedings were had before Mr. Justice Kennedy, who decided against appellant. Appeals were taken by the latter from such decision, to the general term and to the court of appeals, in both of which courts the determination of the original court was affirmed. While, perhaps, it does not appear clearly that these proceedings were instituted by the appellant as guardian, still it is manifest that they must have been so instituted, and were founded and predicated upon those provisions in the will which awarded to him the custody of the infant during her minority. The decision against him did not in any manner contravene his claim in this respect, but held that, under all of the circumstances, it was not advisable that the infant should be taken from the home where she was then living. This determination was expressly without prejudice to his right to renew the proceedings if he saw fit. Under all of the circumstances, we do not think that he was guilty of any such unreasonable conduct as prohibits him from having credit for the costs and expenses incurred by him upon the original hearing. It might perhaps be said that it was his duty, in accordance with the will of his testator, to go to this extent, and that he should have credit for any expenses necessarily incurred in so doing. When, however, the original proceedings were decided against him, we think that, if he saw fit to contest the matter farther by appeals, it was at his own peril in the matter of costs. As we are able to gather from the account in evidence, the total expenses incurred by the appellant upon this original hearing were $77.70, and we think that the decree of the surrogate upon this branch of the account should be so modified as to give him credit for that amount, with interest from May 7, 1887.

It is suggested in behalf of the appellant that a certain proceeding instituted against him by the respondent Walts to compel the payment to the latter for the benefit of the infant of the income upon the

trust fund is still pending and is a bar to this proceeding. Such application was made several years ago. None of the papers upon it are printed, and it does not appear very clearly what has become of the proceeding. There is nothing in the evidence before us which warrants us in holding that there is any such proceeding pending as would be a bar to this accounting.

In conclusion, we are of the opinion that the surrogate's decree should be modified as follows: (1) The appellant should be charged with interest, with annual rests, at the rate of 4½ per cent. per annum upon $5,000 from November 10, 1886, to March 1, 1889, and at the rate of 5 per cent. per annum from March 1, 1889, to the time of the accounting, instead of at the rate of six per cent. per annum. (2) He should be credited with the sum of $77.70, with interest thereon at the same rate charged against him from May 7, 1887, to the date of the accounting, on account of expenses and disbursements incurred by him in the habeas corpus proceedings to recover possession and custody of the infant. As thus modified the decree should be affirmed, without costs to either party.

Decree of surrogate modified, and as modified affirmed, without costs to either party. All concur, except WILLIAMS, J., not voting.